1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MICHAEL ANTHONY,

11              Petitioner,                    No. CIV S-02-0081 FCD JFM P

12        vs.

13   GAIL LEWIS, Warden, et al.,

14              Respondents.             FINDINGS & RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1998 conviction pursuant

18   to a guilty plea on charges of second degree robbery.  He seeks relief on the grounds that: (1) his

19   trial counsel rendered ineffective assistance; (2) his constitutional rights were violated when the

20   trial court accepted a plea agreement which violated state law; (3) his sentence pursuant to

21   California's Three Strikes Law violated the plea agreements in his prior criminal proceedings; (4)

22   his due process rights were violated when the California Court of Appeal rejected his state

23   habeas petition before it received his traverse; and (5) his sentence constitutes cruel and unusual

24   punishment.  Upon careful consideration of the record and the applicable law, the undersigned

25   will recommend that petitioner's application for habeas corpus relief be denied.

26   /////

1

1                                  PROCEDURAL BACKGROUND

2          Pursuant to a plea agreement, petitioner pled guilty to one count of robbery and

3  admitted two prior "strike" felony convictions under California's Three Strikes Law.  (Clerk's

4  Transcript on Appeal (CT) at 118-20.)  Petitioner was sentenced to twenty-five years-to-life in

5  state prison.  (Id.)

6          Petitioner filed a timely appeal of his conviction and sentence.  (Answer, Ex. A.)

7  Petitioner claimed that: (1) the trial court erroneously imposed a restitution fine; (2) the trial

8  court abused its discretion when it refused to strike one of his "strike" priors; and (3) his sentence

9  constitutes cruel and unusual punishment.  (Id.; Answer, Ex. B at 2.)   The California Court of

10  Appeal modified the amount of the restitution fine and affirmed the judgment as modified.

11  (Answer, Ex. B at 2.)  Petitioner filed a timely petition for review in the California Supreme

12  Court.  (Answer, Ex. C.)  The petition for review was summarily denied.  (Id.)

13          Petitioner subsequently filed a petition for writ of habeas corpus in the Amador

14  County Superior Court, which rejected petitioner's claims in a reasoned decision dated July 19,

15  1999.  (Answer, Ex. D.)[1]  On August 3, 1999, petitioner filed a petition for writ of habeas corpus

16  in the Shasta County Superior Court.  (Answer, Ex. E.)  Therein, petitioner claimed that

17  application of the Three Strikes law to his case violated his right to due process, constituted an ex

18  post facto law, and violated plea agreements in his prior criminal proceedings, because he was

19  not aware when he entered into the prior agreements that he could be sentenced later under a

20  /////

21

22          [1] Respondent has not filed a copy of petitioner's application for writ of habeas corpus to
the Amador County Superior Court.  However, the Superior Court addressed the following
23  claims in its opinion: (1) whether petitioner's sentence should be set aside because application of
California's Three Strikes Law resulted in an ex post facto violation; (2) whether petitioner's
24  sentence of twenty-five years-to-life constituted cruel and unusual punishment; (3) whether the
imposition of the Three Strikes Law deprived petitioner of a liberty interest in being sentenced
25  under the statute in effect at the time of his prior convictions; and (4) whether "the prosecution
changed 'a detriment in an offender's decision to accept a plea agreement, after the fact.'" (Id. at
26  40-42.)

1   recidivist sentencing scheme.  (Id.)  The Shasta County Superior Court denied these claims in a

2   reasoned decision, as follows:

3           Petition for Writ of Habeas Corpus, filed August 3, 1999, is
        denied.
4
        The sentence imposed was not in violation of the negotiated plea.
5       (See People v. Michael David Anthony C028811).  PC 1170.12 is
        not an ex post facto law.  People v. Brady (1995) 34 Cal.App.3d
6       651.  Based on the facts presented herein, the length of
        incarceration as applied to petitioner is not cruel and unusual
7       punishment.

8   (Id.)

9           On March 13, 2000, petitioner filed another petition for writ of habeas corpus in

10  the Shasta County Superior Court.  (Answer, Ex. F.)  Therein, he claimed that his counsel

11  rendered ineffective assistance when he: (1) coerced petitioner into entering into an illegal plea

12  bargain; (2) failed to alert the trial court to the fact that it was illegal to dismiss enhancements

13  under the Three Strikes Law; (3) failed to alert the trial court to the fact that "there was no time

14  credit reduction on a life sentence under the Three Strikes law;" and (4) failed to request a

15  competency hearing.  (Id.)  That petition was denied by order dated May 17, 2000.  (Id.)  An ex

16  parte motion for reconsideration was summarily denied by order dated August 1, 2000.  (Id.)

17          On September 28, 2000, petitioner filed a petition for writ of habeas corpus in the

18  California Court of Appeal.  (Answer, Ex. G.)  Therein, he claimed that: (1) his trial counsel

19  rendered ineffective assistance when he advised petitioner to enter into an illegal plea bargain;

20  (2) his trial counsel rendered ineffective assistance when he "brought the unauthorized dismissal

21  of enhancements to the [petitioner] as part of an illegal plea bargain, when he expressly knew

22  that the dismissal was not authorized;" (3) his trial counsel rendered ineffective assistance when

23  he failed to bring to the trial court's attention the fact that there was no time credit reduction on a

24  life sentence under the Three Strikes Law; (4) the trial court acted in excess of its jurisdiction

25  when it approved the plea agreement; (5) the state of California breached its agreement with

26  petitioner on the issue of custody credits because, pursuant to the Three Strikes Law, custody

3

1 credits are not allowed on a life sentence; and (6) his sentence was unlawful because it was not

2 authorized by California law.  (Id.)  The California Court of Appeal denied these claims with the

3 following reasoning:

> The petition for writ of habeas corpus is denied as to grounds I - IV
> and VI.  As to ground V of the petition for writ of habeas corpus,
> the petition is denied without prejudice to filing in the Superior
> Court in the first instance.  (See In re Hillery (1962) 202
> Cal.App.2d 293, 294.)

7 (Id.)

8            On February 22, 2001, petitioner filed a third petition for writ of habeas corpus in

9 the Shasta County Superior Court.  (Answer, Ex. H.)  Therein, he raised claim No. 5, above, in

10 an apparent attempt to follow the direction of the California Court of Appeal that the claim

11 should be raised in the Superior Court in the first instance.  (Id.)  The Superior Court denied the

12 claim on the grounds that it could have been, but was not, raised on direct appeal.  (Id.)

13           On May 22, 2001, petitioner filed a petition for writ of habeas corpus in the

14 California Supreme Court.  (Answer, Ex. I.)  Therein, he claimed that: (1) his trial counsel

15 rendered ineffective assistance when he advised petitioner to enter into an illegal plea bargain;

16 (2) his trial counsel rendered ineffective assistance when he "brought the unauthorized dismissal

17 of enhancements as an inducement" to enter into the plea agreement; (3) his trial counsel

18 rendered ineffective assistance when he "failed to advise petitioner of the zero credit rule

19 contained in the Three Strikes Law" and failed to correct the trial court's incorrect advice to

20 petitioner that he was entitled to time credits; (4) the trial court acted in excess of its jurisdiction

21 when it allowed petitioner to enter into the plea agreement, in violation of petitioner's right to

22 due process; (5) the implementation of the Three Strikes Law to petitioner's sentence constituted

23 a breach of plea agreements entered into in prior proceedings and also violated contract law and

24 petitioner's right to due process; and (6) the trial court erred when it decided his petition for writ

25 of habeas corpus without considering petitioner's traverse or his motion to vacate judgment,

26 thereby violating his right to due process.  (Id.)  On August 23, 2001, petitioner filed an

4

1    amendment to this petition, in which he added a claim that his counsel rendered ineffective

2    assistance when he failed to request a hearing to determine whether petitioner was competent to

3    stand trial.  (Answer, Ex. J.)  This petition, including the amendment, was summarily denied by

4    the California Supreme Court by order dated November 28, 2001.  (Answer, Ex. K.)

5                                FACTUAL BACKGROUND[2]

6           About 10 p.m. on April 29, 1997, [petitioner] robbed Scott
            Alexander who worked at the World Gym in Redding.  Alexander
7           reported that [petitioner] had been at the gym earlier seeking a
            membership application which he filled out and then left claiming
8           he would return later that evening with his first payment.  When
            [petitioner] returned, he placed a note on the counter, told
9           Alexander to read it and pulled a blue steel handgun partly out of
            his jacket.  The note stated, "This is a robbery.  Before you think of
10          being a hero, I have a gun and I will kill you."

11          Alexander asked whether [petitioner] was sure he wanted to
            commit a robbery.  Defendant replied that he was tired of being
12          cold, hungry and homeless and ordered Alexander to retrieve the
            money from the register and safe.  After obtaining about $510 from
13          the register and the safe, [petitioner] bound Alexander's hands with
            duct tape.  Alexander again asked whether [petitioner] was sure he
14          wanted to commit a robbery.  [Petitioner] responded, "Yes that
            they had screwed him here."

15
            The owner of World Gym, Wayde Welch, identified [petitioner]
16          from a videotape.  [Petitioner] had worked for the gym in January
            and February 1997.

17
            [Petitioner] was arrested at his girlfriend's apartment.
18          [Petitioner's] athletic bag contained numerous items, including
            $500 in cash and two robbery notes.

19
            [Petitioner's] former roommate, Charles McDermot, claimed
20          [petitioner] owned a BB gun, not an actual firearm, and gave an
            officer a plastic display carton which had held an air pistol.

21

22   (People v. Anthony, slip op. at 2-3.)

23   /////

24

25          [2]  This statement of facts is taken from the February 26, 1999, opinion by the California
     Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 2-3, appended as
26   Exhibit B to Respondent's Answer, filed on June 3, 2003.

                                         5

ANALYSIS

I.  Standards for a Writ of Habeas Corpus

        Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

        Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the  Supreme Court and nevertheless arrives at different result.  Early v. Packer, 573 U.S. 3, 8 (2002) (quoting Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

        Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

        The court looks to the last reasoned state court decision as the basis for the state court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

1   reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

2   habeas court independently reviews the record to determine whether habeas corpus relief is

3   available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

4   II.  Petitioner's Claims

5              A.  Ineffective Assistance of Trial Counsel

6              Petitioner's first claim is that his trial counsel rendered ineffective assistance

7   when he: (1) advised petitioner to enter into a plea agreement even though plea agreements are

8   barred under California's Three Strikes Law; (2) allowed the plea agreement to go forward even

9   though it violated state law by requiring the dismissal of two of petitioner's prior convictions; (3)

10  incorrectly advised petitioner as to the amount of custody credits he would receive; and (4) failed

11  to request a hearing to determine whether petitioner was competent to stand trial.  The court will

12  analyze these claims below after setting forth the appropriate standards of review and the

13  applicable law.

14             1.  Standards of Review

15             As described above, petitioner raised his claim of ineffective assistance of counsel

16  for the first time in a petition for writ of habeas corpus in the Shasta County Superior Court.

17  (Answer, Ex. F at 18-29.)  The Superior Court denied the first three prongs of the claim on the

18  procedural grounds that these claims could have been, but were not, raised on appeal.  (Id. at

19  consecutive p. 2.)  The court denied the fourth prong on the merits, on the basis that petitioner

20  had failed to demonstrate either that trial counsel's failure to request a competency hearing was

21  unreasonable or that petitioner suffered prejudice as a result of counsel's actions.  (Id. at

22  consecutive pgs. 2-3.)

23             Petitioner next raised the first three prongs of his ineffective assistance of counsel

24  claim in a petition for writ of habeas corpus to the California Court of Appeal.  (Answer, Ex. G.)

25  The appellate court summarily denied the claims, thereby adopting the reasoning of the Superior

26  Court as to these claims.  (Id.)  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (federal

1   court will "look through" an unexplained state court decision to the last reasoned decision as the

2   basis for the state court's judgment).  Petitioner next raised all four prongs of his ineffective

3   assistance of counsel claim in a petition for writ of habeas corpus to the California Supreme

4   Court.  (Answer, Exs. I, J.)  The Supreme Court summarily denied all of petitioner's claims,

5   thereby adopting the reasoning of the California Superior Court as to these claims.  (Answer, Ex.

6   K.)  Nunnemaker, 501 U.S. at 803-04.

7           Respondent argues that petitioner's claim of ineffective assistance of counsel

8   should be denied on the merits.  He does not argue that any part of the claim is procedurally

9   barred and has therefore waived any such defense.  See Bennett v. Mueller, 322 F.3d 573, 584-86

10  (9th Cir. 2003).  Because the California courts denied the first three prongs of petitioner's

11  ineffective assistance of counsel claim on procedural grounds, there is no state court decision on

12  the merits of these claims.  When it is clear that a state court has not reached the merits of a

13  petitioner's claim, the AEDPA's deferential standard does not apply and a federal habeas court

14  must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Killian v.

15  Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (AEDPA standard of review not applicable because

16  state court did not reach the merits of petitioner's perjury claim).  Accordingly, this court will

17  review de novo the first three prongs of petitioner's claim that his trial counsel rendered

18  ineffective assistance.

19          The fourth prong of petitioner's ineffective assistance of counsel claim was denied

20  on the merits by the California courts.  Accordingly, as to this part of petitioner's claim, the court

21  will utilize the standards set forth in AEDPA.

22          2.  Legal Standards

23          The Sixth Amendment guarantees the effective assistance of counsel.  The United

24  States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

25  Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

26  counsel, a petitioner must first show that, considering all the circumstances, counsel's

1    performance fell below an objective standard of reasonableness.  Id. at 687-88.  After a petitioner

2    identifies the acts or omissions that are alleged not to have been the result of reasonable

3    professional judgment, the court must determine whether, in light of all the circumstances, the

4    identified acts or omissions were outside the wide range of professionally, competent assistance.

5    Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  In assessing an ineffective assistance of

6    counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide

7    range of professional assistance.'"  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting

8    Strickland, 466 U.S. at 689).  There is in addition a strong presumption that counsel "exercised

9    acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d

10   695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

11           Second, a petitioner must establish that he was prejudiced by counsel's deficient

12   performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

13   probability that, but for counsel's unprofessional errors, the result of the proceeding would have

14   been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine

15   confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224

16   F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's

17   performance was deficient before examining the prejudice suffered by the defendant as a result of

18   the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of

19   lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949,

20   955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

21           3.  Analysis

22           In the first two prongs of petitioner's claim of ineffective assistance of counsel,

23   petitioner argues that his trial counsel improperly allowed him to enter into a plea agreement that

24   was illegal under California law.  Specifically, petitioner contends that: (1) plea bargains are not

25   allowed under California's Three Strikes Law; and (2) a specific provision in the plea agreement

26   requiring the dismissal of prior "strike" allegations is prohibited by the California Penal Code.

9

Counsel's actions in advising petitioner to enter into the plea agreement occurred prior to the entry of petitioner's plea.  Petitioner may not raise claims of deprivation of his constitutional rights that occurred prior to his guilty plea. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973).  See also Hudson v. Moran, 760 F.2d 1027, 1029-30 (9th Cir. 1985) (voluntary and intelligent guilty plea precludes federal habeas relief based upon "independent claims" of pre-plea constitutional violations); Ortberg v. Moody, 961 F.2d 135, 137 (9th Cir. 1992) ("petitioner's nolo contendere plea precludes him from challenging alleged constitutional violations that occurred prior to the entry of that plea").  Petitioner waived these ineffective assistance of counsel claims when he chose to plead guilty.

A defendant may attack the voluntary and intelligent character of the guilty plea by showing that he received incompetent advice from counsel in connection with entry of the plea.  Tollett, 411 U.S. at 267 (a defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann" [v. Richardson, 397 U.S. 759 (1970)] (holding that all defendants facing felony charges are entitled to the effective assistance of competent counsel); Mitchell v. Superior Court for City of Santa Clara, 632 F.2d 767, 769-70 (9th Cir. 1980).

Assuming arguendo that petitioner is attacking the voluntary and intelligent character of his guilty plea by alleging that the advice he received from counsel to plead guilty was improper, his claim should be denied.  In order to demonstrate ineffective assistance of counsel in the context of a challenge to a guilty plea, the petitioner must show that counsel's advice fell below an objective standard of reasonableness as well as reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to

1   trial.  Strickland, 466 U.S. at 688; Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).  Petitioner has not

2   made either showing.

3            The prosecution's case against petitioner was overwhelming.  Petitioner admitted

4   the crime to the police.  The robbery was videotaped.  The cashier and gym owner, both of whom

5   knew petitioner, identified him as the robber.  Robbery notes and the same amount of cash stolen

6   from the gym were found in petitioner's residence.  Further, petitioner's plea ultimately resulted

7   in a sentence of twenty-five years to life in prison.  Without a plea agreement, petitioner would

8   have faced a sentence of thirty-five-years-to-life.  (Reporter's Transcript on Appeal (RT) at 7-8.)

9   These facts preclude a reasonable claim that petitioner would have insisted on going to trial if he

10  had been informed that his favorable plea agreement was in technical violation of state law.

11  Further, counsel's advice to plead guilty under these circumstances was certainly within the wide

12  range of competence demanded of attorneys in criminal cases.  Strickland, 466 U.S. at 691.

13  Accordingly, the first two prongs of petitioner's ineffective assistance claim should be denied.

14           In the third prong of petitioner's claim, he argues that his trial counsel rendered

15  ineffective assistance when he advised petitioner "that he would receive 20 percent credits on his

16  sentence and thus be eligible for parole in 20 years."  (Traverse at 18.)  In fact, petitioner will not

17  be eligible for parole until he has served 25 years of his sentence.  In re Cervera, 24 Cal.4th 1073,

18  1080 (2001) (holding that third-strike defendants serving indeterminate sentences of 25 years-to-

19  life are not eligible for parole until they have served 25 years).  Petitioner argues that counsel

20  "had an obligation to investigate relevant law and know that California's three strikes law

21  prohibits granting custody credits on an indeterminate sentence."  (Traverse at 18.)  Petitioner

22  summarizes his claim as follows: "What was counsel's role in this?  He has a duty to his client to

23  investigate all applicable laws.  By failing to do so, he erroneously informed petitioner that he

24  would be eligible for parole in 20 years.  As this was one of the components of the illegal plea

25  /////

26  /////

11

1  bargain, and it's not being fulfilled, the State of California is in Breach of the plea bargain."

2  (Pet. at 11.)[3]

3         A guilty plea must be knowing, intelligent and voluntary.  Brady v. United States,

4  397 U.S. 742, 748 (1970).  "The voluntariness of [a petitioner's] guilty plea can be determined

5  only by considering all of the relevant circumstances surrounding it."  Id. at 749.  The Court of

6  Appeals for the Ninth Circuit has held that where counsel's erroneous advice about a client's

7  sentence reflects a gross mischaracterization of the likely outcome Strickland error may be

8  present.  See e.g., Iaea v. Sunn, 800 F. 2d 861, 865 (9th Cir. 1996) (counsel misinformed

9  petitioner that there was almost no chance of receiving an extended life sentence if he pled guilty,

10 and that he had a chance to receive probation; petitioner received three life sentences. The court

11 stated: "[t]hough a mere inaccurate prediction, standing alone, would not constitute ineffective

12 assistance (citations omitted) the gross mischaracterization of the likely outcome presented in

13 this case, combined with the erroneous advice on the possible effects of going to trial, falls below

14 the level of competence required of defense attorneys"); Carter v. McCarthy, 806 F.2d 1373 (9th

15 Cir. 1986) (failure to advise a defendant of lifelong parole consequences); U.S. ex rel. Pebworth

16 v. Conte, 489 F.2d 266, 268 (9th Cir. 1974) (petitioner waived an attorney but was not told that

17 the punishment for forgery might be 20 years).  However, absent such a gross

18 mischaracterization, a mere "erroneous prediction by a defense attorney concerning sentencing

19 does not entitle a defendant to challenge his guilty plea."  United States v. Michlin, 34 F.3d 896,

20 899 (9th Cir. 1994) (quoting United States v. Garcia, 909 F.2d 1346, 1348 (9th Cir. 1990) and

21 United States v. Turner, 881 F.2d 684, 687 (9th Cir. 1989); Doganiere v. U.S., 914 F.2d 165, 168

22 (9th Cir. 1990).

23

24         [3] The state court record reflects that it was the trial judge who informed petitioner that he
   would accrue custody credits to advance his parole date. (See RT at 7-8.)  In his answer,
25 respondent correctly points out that there is no evidence in the record that petitioner's counsel
   also made such a statement.  However, petitioner contends his attorney also informed him that he
26 was eligible for these custody credits.  (Pet. at 11; Traverse at 18-20.)

1       Petitioner has failed to demonstrate that his counsel rendered ineffective

2   assistance because of his advice to petitioner that he would receive time credits against his

3   sentence and would therefore be eligible for parole in 20 years.  The court notes that the allegedly

4   erroneous advice petitioner received did not relate to the length of his sentence, but rather to the

5   earliest date that he would become eligible for parole.  Petitioner acknowledges that "there is not

6   [sic] guarantee that petitioner will be granted parole at all . . ." (Traverse at 20.)  The difference

7   between parole eligibility in 20 years and parole eligibility in 25 years, although important, does

8   not rise to the level of a gross mischaracterization of the likely sentencing outcome so as to

9   invalidate petitioner's guilty plea.

10      Petitioner has also failed to demonstrate a reasonable probability that, but for

11  counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.  As

12  discussed above, the evidence against petitioner was overwhelming.  By entering into the plea

13  agreement, petitioner received ten years off a likely sentence of thirty-five years-to-life.  Under

14  these circumstances, petitioner's plea of guilty was certainly in his best interests.  There is no

15  evidence that petitioner was reluctant to plead guilty or that he placed particular emphasis on his

16  parole eligibility in deciding whether to plead guilty.  In fact, by signing the plea agreement

17  petitioner acknowledged that "no one has promised to suggested to me that I will receive a lighter

18  sentence, probation, reward, immunity or anything else to get me to plead as indicated." (CT at

19  87.)  Because petitioner has failed to show either incompetence or prejudice, he is not entitled to

20  relief on this claim.

21      Petitioner also argues that the state of California is in breach of the plea agreement

22  because of the fact that, contrary to the advice of his attorney and the trial court, he will not

23  receive time credits against his sentence but will have to serve 25 years before becoming eligible

24  for parole.  (Traverse at 19.)  This court rejects that argument.  The state did not have a

25  constitutional obligation to inform petitioner of his parole eligibility.  See Hill, 474 U.S. at 56

26  ("[w]e have never held that the United States Constitution requires the State to furnish a

defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary"). Petitioner has not shown that the trial court's advice at the sentencing hearing constituted a term of the plea agreement. Further, petitioner has not pointed to any part of the plea agreement that was breached. Petitioner received the exact sentence he was promised: 25 years-to-life. (See RT at 5-11.) Accordingly, any claim that his plea agreement was breached by the state should be denied.

In the fourth and final prong of this claim, petitioner argues that his trial counsel rendered ineffective assistance when he failed to investigate petitioner's mental health and failed to request a hearing to determine whether petitioner was competent to stand trial. He states that counsel had in his possession records that demonstrated petitioner had "a documented Bi-Polar disorder" and had spent two months in the hospital when he was a child because of a suicide attempt. (Pet. at 11.) Petitioner also states that he was depressed, homeless, and without a job at the time of the crime, but "counsel failed to even investigate this as a possible defense." (Id.) Finally, petitioner states that when his trial counsel visited him in jail, petitioner informed him that he had been placed in a "safety cell" because of a suicide attempt. (Id.)[4]

In support of his claim in this regard, petitioner has filed medical records indicating that when he was 12 years old he was admitted to the hospital because he had attempted suicide by standing in front of a speeding truck. (Traverse, Ex. 1.) Shortly prior to this incident, petitioner had been removed from his family and placed in foster care. (Id.) Petitioner was diagnosed with "atypical bipolar disorder" and was prescribed medication to control his mood swings and "angry spells." (Id.) Petitioner has also filed a letter dated March 25, 2003, which he received from Irwin S. Rosenfarb, a professor at the California School of Professional Psychology, after writing to ask some general questions about bi-polar disorder.

---

[4] Petitioner is not claiming that his plea was actually involuntary due to mental incompetence, nor does he claim that the trial court should have raised the issue of petitioner's competence sua sponte. Accordingly, cases cited by petitioner addressing such claims are not on point.

(Traverse, Ex. 2.)  In his letter, Dr. Rosenfarb states that bipolar disorder is a severe psychiatric disorder characterized by manic and depressive episodes, that patients with this disorder need to be treated continually with medication, that stress may bring on manic or depressive episodes, and that the disorder will get worse if left untreated.  (Id.)

As described above, the California Superior Court provided a reasoned decision on the merits of petitioner's claim that his counsel rendered ineffective assistance because of his failure to request suspension of the criminal proceedings to determine whether petitioner was competent to stand trial.  (Answer, Ex. F at consecutive pgs. 2-3.)  Accordingly, that opinion provides the basis for the state court judgment.  Avila, 297 F.3d at 918.  The Superior Court rejected the claim as follows:

> Regarding petitioner's fourth reason, the court record reveals petitioner entered his plea on October 2, 1997.  He wasn't sentenced until February 19, 1998, and had several court appearances in the interim.  The trial court never made any observations petitioner may have been incompetent.  His trial counsel filed a declaration, attached to the People's Return, which indicates petitioner never appeared incompetent during the proceedings.
>
> Moreover, in order to establish a claim of ineffective assistance of counsel, petitioner must establish he was prejudiced by counsel's alleged deficient representation.  (Strickland v. Washington (1984) 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.)  Other than making general assertions he was prejudiced, quoting extensively the definition of prejudice, and making a bare assertion that his prior convictions were somehow unconstitutional, petitioner provides no facts from which the court could conclude the showing of prejudice has been made.

(Answer, Ex. F at consecutive pgs. 2-3.)

Assuming arguendo that this pre-plea claim has not been waived, it should be denied.  Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  Strickland, 466 U.S. at 691.  Therefore, counsel must, "at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client."  Hendricks v. Calderon, 70 F.3d

1032, 1035 (9th Cir. 1995) (quoting <u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1456 (9th Cir. 1994) (internal citation and quotations omitted).  On the other hand, where an attorney has consciously decided not to conduct further investigation because of reasonable tactical evaluations, his or her performance is not constitutionally deficient.  <u>See Siripongs v. Calderon</u>, 133 F.3d 732, 734 (1998); <u>Babbitt v. Calderon</u>, 151 F.3d 1170, 1173-74 (9th Cir. 1998); <u>Hensley v. Crist</u>, 67 F.3d 181, 185 (9th Cir. 1995).  "A decision not to investigate thus 'must be directly assessed for reasonableness in all the circumstances.'"  <u>Wiggins</u>, 539 U.S. at 533 (quoting <u>Strickland</u>, 466 U.S. at 691).  A reviewing court must "examine the reasonableness of counsel's conduct 'as of the time of counsel's conduct.'"  <u>United States v. Chambers</u>, 918 F.2d 1455, 1461 (9th Cir. 1990) (quoting <u>Strickland</u>, 466 U.S. at 690).

A defendant is incompetent to stand trial if he lacks sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or lacks a rational as well as factual understanding of the proceedings against him.  <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1960).  <u>See also Godinez v. Moran</u>, 509 U.S. 389, 396 (1993); <u>Williams v. Woodford</u>, 384 F.3d 567, 608 (9th Cir. 2004).  In the end, whether a defendant is capable of understanding the proceedings and assisting counsel depends on "evidence of the defendant's irrational behavior, his demeanor in court, and any prior medical opinions on competence to stand trial." <u>Drope v. Missouri</u>, 420 U.S. 162, 180 (1975).  None of these factors is determinative, but any one of them may be sufficient to raise a reasonable doubt regarding competence.  <u>Id.</u>  The burden of establishing mental incompetence rests with the petitioner.  <u>Boag v. Raines</u>, 769 F.2d 1341, 1343 (9th Cir. 1985); <u>Lee v. United States</u>, 468 F.2d 906, 906-07 (9th Cir. 1972); <u>see also</u> <u>Williams</u>, 384 F.3d at 608.  Retrospective determinations of incompetency are disfavored and considerable weight is to be given to any lack of contemporaneous evidence of a petitioner's incompetence to stand trial.  <u>Williams</u>, 306 F.3d at 608.

Petitioner has provided no specific examples or evidence to demonstrate that he was unable to understand the nature of the proceedings against him or to assist counsel.  As

1   explained by one court, "[i]n cases finding sufficient evidence of incompetency, the petitioners

2   have been able to show either extremely erratic and irrational behavior during the course of the

3   trial . . . or lengthy histories of acute psychosis and psychiatric treatment . . . ."  Boag, 769 F.2d at

4   1343 (citations omitted).  There is no such evidence here.  There is also no evidence that anyone

5   perceived petitioner was unable to comprehend or help with the proceedings.  No party raised a

6   question as to petitioner's competency before the trial court.  See Lewis, 991 F.2d 524, 528 (9th

7   Cir. 1993) (a defense counsel's silence on the petitioner's competency is some evidence that the

8   petitioner showed no signs of incompetence at that time).  See also Medina v. California, 505

9   U.S. 437, 450 (1992) ("defense counsel will often have the best-informed view of the defendant's

10  ability to participate in his defense"); Douglas v. Woodford, 316 F.3d 1079, 1094 (2003) (finding

11  it significant that neither the prosecutor or the trial judge expressed any concerns about

12  petitioner's competence).  On the contrary, respondent has submitted the declaration of

13  petitioner's counsel, wherein counsel declares that it did not appear petitioner was or may have

14  been incompetent to stand trial, he believed that petitioner understood the proceedings and the

15  consequences of the charges against him, and petitioner was able to effectively assist him in

16  preparing a defense.  (Answer, Ex. L.)

17          Petitioner has also failed to demonstrate that his bi-polar disorder rendered him

18  incompetent to enter a plea or to understand the proceedings.  See Chavez, 656 F.2d 512, 518

19  (9th Cir. 1981) ("evidence of possible present incompetence, such as a history of psychiatric

20  problems in the remote past, may be so overshadowed by other evidence of present competence

21  that it does not demand further investigation at an evidentiary hearing").  In connection with his

22  guilty plea, petitioner declared that he fully understood his plea and its consequences.  (CT at 86-

23  87.)  At the change of plea hearing, petitioner informed the court that he read and understood the

24  change of plea form that he had signed.  (RT at 5.)  Petitioner also stated that he had no questions

25  about the plea.  (Id. at 6.)  Although petitioner now contends that his attorney took advantage of

26  /////

his mental condition to coerce him to plead guilty, petitioner informed the trial judge that he had not "been forced or threatened into entering this plea in any way." (Id. at 7.)

The decision of the California Superior Court rejecting petitioner's claim in this regard is not contrary to or an unreasonable application of Strickland. The record before the court does not substantiate petitioner's claim that he was unable to understand the proceedings against him or to enter a voluntary and knowing guilty plea, nor does it raise a "bona fide doubt" as to his competency to stand trial. In light of petitioner's demeanor and actions during the relevant proceedings and a relative lack of any other indication that petitioner was not competent to enter a plea, counsel was not ineffective in failing to request a competency hearing. Accordingly, petitioner is not entitled to relief on this claim.

Petitioner "submits that an evidentiary hearing is imperative to resolving this issue." (Traverse at 26.) In a habeas proceeding, "a petitioner is entitled to an evidentiary hearing on the issue of competency to stand trial if he presents sufficient facts to create a real and substantial doubt as to his competency, even if those facts were not presented to the trial court." Deere v. Woodford, 339 F.3d 1084, 1086 (9th Cir. 2003) (quoting Boag, 769 F.2d at 1343). A "good faith" or "substantial doubt" exists in this regard "when there is substantial evidence of incompetence." Deere, 339 F.3d at 1086 (quoting Cuffle v. Goldsmith, 906 F.2d 385, 392 (9th Cir. 1990)). For the reasons explained above, petitioner has failed to show a real and substantial doubt as to his competency to stand trial. Accordingly, the court does not find good cause to conduct an evidentiary hearing.

B. Trial Court's Acceptance of Plea Agreement

In his next claim, petitioner contends that his due process rights were violated when the trial court acted in excess of its jurisdiction by allowing petitioner to enter into a plea agreement that violated California law. (Pet. at 5.) As in the claim above, petitioner argues that the plea bargain itself was illegal under California's Three Strikes Law and that the provision allowing for dismissal of his prior serious felony conviction enhancements was invalid. (Id. at 5,

11.)  Petitioner argues: "[w]hen the court violated the law in order to obtain a conviction, petitioner was denied [the] right to a fair hearing."  (Id. at 12.)[5]

Respondent counters that: (1) petitioner's challenge to the terms of the plea agreement is not cognizable because it concerns matters that occurred prior to petitioner's plea of guilty and petitioner has received the benefit of his bargain; (2) petitioner lacks standing because

---

[5]    Petitioner's plea agreement provided that petitioner was:

> pleading guilty to and admitting all of the charges and the allegations on the information with some understandings.

> That understanding is, first of all, that you will be making a request to the Court through your counsel to exercise its discretion and strike at least one of the strikes, 1170.12 allegations.  If the Court strikes the allegation, then everything else will remain and you will be sentenced accordingly.  If the Court does not strike the allegation, the DA has agreed to strike the two 667(a) allegations which are the enhancements of five years each for prior serious felonies.

(RT at 5-6.)  The trial court ultimately declined to strike any of the prior conviction allegations contained in the information against petitioner.  (Id. at 54.)  However, pursuant to the plea agreement, the prosecutor made a motion to strike the Cal. Pen. Code § 667(a) enhancement allegations.  (Id. at 54-55.)  That motion was granted and petitioner received a 10-year reduction in his sentence.  (Id. at 55.)

Petitioner argues that these facts violated the following California statutes:

> Prior felony convictions shall not be used in plea bargaining as defined in subdivision (b) of Section 1192.7. The prosecution shall plead and prove all known prior felony convictions and shall not enter into any agreement to strike or seek the dismissal of any prior felony conviction allegation except as provided in paragraph (2) of subdivision (f).

Cal. Pen. Code § 667(g).  See also Cal. Pen. Code § 1170.12(e).

> The prosecuting attorney may move to dismiss or strike a prior felony conviction allegation in the furtherance of justice pursuant to Section 1385, or if there is insufficient evidence to prove the prior conviction. If upon the satisfaction of the court that there is insufficient evidence to prove the prior felony conviction, the court may dismiss or strike the allegation.

Cal. Pen. Code § 667(f)(2).  See also Cal. Pen. Code § 1170.12(d)(2).

1    he has suffered no injury but, instead, received a benefit from the plea bargain in the form of a

2    reduced sentence; and (3) petitioner has suffered no prejudice because he received a ten-year

3    reduction in his sentence.  Petitioner argues, on the other hand, that: (1) his claim is cognizable

4    because jurisdictional challenges to a conviction are not waived by a guilty plea; and (2) even

5    though he obtained a ten-year reduction in his sentence as a result of the plea bargain, he suffered

6    prejudice because his "sentence and conviction are void" and, therefore, he "in fact can't receive

7    any benefit."  (Traverse at 32.)

8            Petitioner's claim in this regard was raised for the first time in a petition for writ

9    of habeas corpus to the California Court of Appeal.  (Answer, Ex. G.)  The Court of Appeal

10   summarily denied the petition.  (Id.)  Petitioner subsequently raised this claim in a petition for

11   writ of habeas corpus to the California Supreme Court, which summarily denied it.  (Answer,

12   Exs. I, K.)  Under those circumstances, this court must independently review the record to

13   determine whether habeas corpus relief is available under section 2254(d).  Delgado, 223 F.3d at

14   982.

15           As explained above, a guilty plea generally waives all claims of constitutional

16   violation occurring before the plea.  Tollett, 411 U.S. at 267.  However, "jurisdictional" claims

17   are an exception to this rule.  See United States v. Montilla, 870 F.2d 549, 552 (9th Cir.1989),

18   amended at 907 F.2d 115 (9th Cir.1990).  Claims that an applicable statute is unconstitutional or

19   that an indictment fails to state an offense are jurisdictional claims not waived by the guilty plea.

20   United States v. Caperell, 938 F.2d 975, 977 (9th Cir. 1991).  However, petitioner is not claiming

21   that any California statute is unconstitutional or that the trial court lacked subject matter

22   jurisdiction.  Rather, he claims that the plea bargain he entered into was in technical violation of

23   a valid California statute.  Accordingly, his claim does not implicate the jurisdiction of the court

24   and was waived by the entry of a guilty plea.  If petitioner's sentence had been imposed under an

25   invalid statute and/or was in excess of that actually permitted under state law, a federal due

26   process violation might be presented.  See Marzano, 915 F.2d at 552 (due process violation

1   found where petitioner's sentence of life imprisonment without the possibility of parole could not

2   be constitutionally imposed under the state statute upon which his conviction was based).

3   However, petitioner has failed to make any such showing.  Petitioner's sentence was not imposed

4   under an invalid statute and was actually lower than permitted under state law.

5        Even assuming that petitioner's claim was not waived, it should be denied.

6   Petitioner is claiming, in essence, that his right to due process was violated because his plea

7   bargain violated California sentencing law.  Habeas relief for a sentencing error may be available

8   if a petitioner can show that a state court's misapplication of its own sentencing laws resulted in

9   fundamental unfairness.  <u>Christian v. Rhode</u>, 41 F.3d 461, 469 (9th Cir.1994) ("[a]bsent a

10   showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does

11   not justify federal habeas relief.").  In order to raise such a claim in a federal habeas corpus

12   petition, the "error alleged must have resulted in a complete miscarriage of justice."  <u>Hill v.

13   United States</u>, 368 U.S. 424, 428 (1962).

14        Any state law error in petitioner's plea bargain did not result in a complete

15   miscarriage of justice.  On the contrary, petitioner received a benefit from the plea bargain in the

16   sense that he received a ten-year reduction on the sentence he would have received had he been

17   found guilty after a trial.  The court notes in this regard, once again, that the evidence against

18   petitioner was overwhelming.  It was clearly in petitioner's best interests to enter a guilty plea in

19   this case.  Petitioner is not entitled to relief on this claim.

20      C.  <u>Whether Application of Three Strikes Law Violated Petitioner's Previous Plea</u>

21   <u>Agreements</u>

22        In his next claim, petitioner argues that "because both of petitioner's prior plea

23   bargains/contracts occurred before the enactment of California's Three Strikes Law on May 7,

24   1994, and because petitioner's prior contracts with the state made no mention of the subsequent

25   enactment being added into the contract – California's Three Strikes law cannot become a part of

26   the contract, and, therefore, petitioner's prior plea bargains cannot be used as strikes."  (Pet. at

13.)  He contends that use of his prior convictions as "strikes" violated his rights to due process and equal protection.  (Id. at 6.)  In the traverse, petitioner further clarifies the nature of his claim as follows:

> Petitioner's claim can be summed up thus: The use of Petitioner's prior plea bargains as "strikes" violates Article I, Section 10 of the United States Constitution as well as Article I, Section 9 of the California Constitution because California's three strikes law was never a part of the original plea bargain/contract, nor can it become a part of the contract."

(Traverse at 33-34.)[6]

Petitioner's claim in this regard was raised for the first time in a petition for writ of habeas corpus filed in the Shasta County Superior Court, and again in a petition for writ of habeas corpus filed in the California Supreme Court.  (Answer, Ex. E at 30; Ex. I at 83.)  The claim was denied on the merits in a reasoned decision by the Shasta County Superior Court, as follows:

> Petition for Writ of Habeas Corpus, filed August 3, 1999, is denied.
>
> The sentence imposed was not in violation of the negotiated plea. (See People v. Michael David Anthony C028811).  PC 1170.12 is not an ex post facto law.  People v. Brady (1995) 34 Cal.App.3d 651.

(Answer, Ex. E.)  The opinion of the Superior Court provides the basis for the state court judgment.  Avila, 297 F.3d at 918.

To the extent petitioner is arguing that his prior convictions are invalid because he was not informed they could be used in subsequent criminal proceedings to enhance his sentence, his claim is barred by Lackawanna v. Coss, 532 U.S. 394 (2001).  In  Lackawanna the Supreme

---

[6] Article I, Section 10 of the United States Constitution prohibits a state from, among other things, impairing the obligation of contracts.  Any claim that use of petitioner's prior convictions as "strikes" under the Three Strikes Law violated the California constitution is not cognizable in this federal habeas corpus petition.  McGuire, 502 U.S. at 67-68; Middleton, 768 F.2d at 1085.

Court held that where, as here, a petitioner's state court conviction was later used to enhance a criminal sentence, "the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained." 532 U.S. at 403-04.  The Supreme Court has allowed a petitioner to collaterally challenge a prior conviction only "where there was a failure to appoint counsel in violation of the Sixth Amendment." Id. at 404.  Because there is no evidence that petitioner was proceeding without counsel in connection with his prior guilty pleas, the "failure to appoint counsel" exception does not apply and he is precluded from collaterally attacking those convictions through a § 2254 petition. See id. at 406.

      In any event, petitioner has failed to establish that his prior guilty pleas were invalid.  "Before a court may accept a defendant's guilty plea, the defendant must be advised of the 'range of allowable punishment' that will result from his plea." Torrey v. Estelle, 842 F.2d 234, 235 (9th Cir. 1988).  However, state courts are not required to advise criminal defendants of all collateral consequences of a plea or of all possible ancillary or consequential results which may flow from a plea of guilty. Id. at 235; see also United States v. Littlejohn, 224 F.3d 960, 965 (9th Cir. 2000).  Thus, a defendant's ignorance of collateral consequences does not deprive a guilty plea of its voluntary character. United States v. Brownlie, 915 F.2d 527, 528 (1990); Torrey, 842 F.2d at 235.  The possibility of future sentence enhancement is a collateral, not a direct, consequence of a guilty plea. Brownlie, 915 F.2d at 528; United States v. Garrett, 680 F.2d 64, 66 (9th Cir. 1982).  Accordingly, petitioner's guilty pleas were not rendered involuntary by his ignorance of the possibility of future sentence enhancement under California's Three Strikes Law. See Wheeler v. Yarbrough, 352 F. Supp.2d 1085, 1094-95 (C.D. Cal. 2005).  In short, petitioner's prior guilty pleas were not involuntary or unintelligent based on the fact that he was not advised that the law might change and that his conviction might result in a longer sentence enhancement than that in force when he pled guilty.

/////

1       Petitioner also argues that his current sentence breached the plea agreements

2   entered with respect to his prior convictions because he did not agree, in entering the agreements,

3   that the conviction later could be used to enhance his sentence under the Three Strikes law.

4   Assuming arguendo that this claim is not barred by Lackawanna, it should be denied.  A guilty

5   plea is invalid if induced by a promise which renders the plea involuntary.  Machibroda v. United

6   States, 368 U.S. 487, 493 (1962); Chizen v. Hunter, 809 F.2d 560, 561 (9th Cir. 1986).  When a

7   plea agreement rests in any significant degree on a promise or agreement of the prosecutor, so

8   that it can be said to be a part of the inducement or consideration, such promise must be fulfilled.

9   Santobello, 404 U.S. 257, 262 (1971); Johnson v. Lumpkin, 769 F.2d 630, 633 (9th Cir. 1985).

10  Due process concerns of fundamental fairness require that a prosecutor keep the promises upon

11  which a defendant relies in entering into a plea agreement.  Claims of a breached plea agreement

12  are analyzed according to contract law standards of interpretation, such that a court looks to what

13  was reasonably understood by the parties to be the terms of the agreement and whether or not

14  those terms were fulfilled.  See United States v. Kamer, 781 F.2d 1380, 1387 (9th Cir. 1986).

15      Petitioner's claim fails because he does not allege that the prosecutor failed to

16  abide by any particular term of the prior plea agreements.  He has not shown any promise by the

17  prosecutor that the convictions would not be used later to enhance a future sentence under a law

18  that did not yet exist and he has not shown that there was a promise that the law would not

19  change.  In fact, petitioner concedes that this subject was not addressed in the earlier proceeding.

20  Any contention that the trial court that imposed petitioner's current sentence breached his prior

21  plea agreements does not compel a different conclusion.  The sentencing court was not a party to

22  petitioner's earlier agreements and was not bound or restricted by them.

23      Petitioner has not met his burden of establishing that the decision of the state

24  courts rejecting this claim was an objectively unreasonable application of federal law.  See 28

25  U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas corpus relief.

26  /////

1    D.  Failure of the California Court of Appeal to Consider Petitioner's Traverse Prior to

2    Issuing its Ruling

3          Petitioner claims that the California Court of Appeal violated his right to due

4    process when it issued a ruling on his petition for writ of habeas corpus before receiving his

5    traverse.  He argues, "[i]f this court concludes that petitioner has a constitutional right to pursue a

6    writ of habeas corpus, then due process demands that petitioner be entitled to all the steps in

7    habeas corpus proceedings.  It stands to reason that if petitioner is denied his right to a traverse

8    and a chance to rebut the States arguments, then he has been denied his constitutional right to due

9    process of law."  (Traverse at 41.)

10         This allegation fails to state a federal claim.  See Franzen v. Brinkman, 877 F.2d

11   26 (9th Cir. 1989) (errors in a state post-conviction review proceeding are not addressable

12   through federal habeas corpus).  Accordingly, it should be denied.

13   E.  Cruel and Unusual Punishment

14         In his final claim, petitioner argues that his sentence of twenty-five years to life

15   for a non-violent felony constitutes cruel and unusual punishment.  (Pet. at 6, 16-20.)  This claim

16   was raised on petitioner's direct appeal and summarily denied by the California Supreme Court

17   on petition for review.  (Answer, Exs. B, C.)  Accordingly, the court will analyze this claim

18   pursuant to 28 U.S.C. § 2254(d).

19         Successful challenges in federal court to the proportionality of particular sentences

20   are "exceedingly rare."  Solem v. Helm, 463 U.S. 277, 289-90 (1983).  See also Ramirez v.

21   Castro, 365 F.3d 755, 775 (9th Cir. 2004).  "The Eighth Amendment does not require strict

22   proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are

23   'grossly disproportionate' to the crime."  Harmelin v. Michigan, 501 U.S. 957, 1001 (1991)

24   (Kennedy, J., concurring).  Thus, in recent years the United States Supreme Court has held that it

25   was not an unreasonable application of clearly established federal law for the California Court of

26   Appeal to affirm a sentence of two consecutive 25 year-to-life imprisonment terms for a petty

1  theft with a prior conviction involving theft of $150.00 worth of videotapes.   Lockyer v.

2  Andrade, 538 U.S. 63, 75 (2003); see also Ewing v. California, 538 U.S. 11, 29 (2003) (holding

3  that a sentence of 25 years-to-life in prison imposed on a grand theft conviction involving the

4  theft of three golf clubs from a pro shop was not grossly disproportionate and did not violate the

5  Eighth Amendment).

6          Because petitioner was sentenced as a recidivist under California's Three Strikes

7  law, "in weighing the gravity" of his offense for purposes of a proportionality analysis, the court

8  "must place on the scales not only his current felony," but also his criminal history.   Ewing, 538

9  U.S. at 29.  See also Ramirez, 365 F.3d at 768.  This is not a case in which the petitioner's

10 criminal history is comprised solely of non-violent offenses stemming from a single, dated

11 incident and single guilty plea resulting in the imposition of only a one-year jail (as opposed to

12 prison) sentence.  See Ramirez, 365 F.3d at 768-69.  Rather, petitioner suffered prior convictions

13 for first degree burglary and second degree robbery and received a five-year prison sentence as a

14 result of his robbery conviction.  (Traverse at 12-13.).

15         Although harsh, petitioner's sentence is not inconsistent with federal law as set

16 forth in the holdings of the United States Supreme Court noted above.  The sentence imposed

17 was within the statutory maximum for the offense committed by petitioner and was not grossly

18 disproportionate to the crime of conviction in light of his criminal history.  See Andrade, 538

19 U.S. at 77; Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004).  Accordingly, petitioner is not

20 entitled to relief on his Eighth Amendment challenge to his conviction.

21         For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that

22 petitioner's application for a writ of habeas corpus be denied.

23         These findings and recommendations are submitted to the United States District

24 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

25 days after being served with these findings and recommendations, any party may file written

26 objections with the court and serve a copy on all parties.  Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2  shall be served and filed within ten days after service of the objections.  The parties are advised

3  that failure to file objections within the specified time may waive the right to appeal the District

4  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5  DATED: October 11, 2005.

6

7

UNITED STATES MAGISTRATE JUDGE

8

9  JFM:8:anthony0081.hc

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26